# IN THE UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF MISSOURI
# SOUTHERN DIVISION

| | |
|---|---|
| CARL LANKFORD, | ) |
| Plaintiff, | ) ) ) |
| v. | ) No. 06-3339-CV-S-FJG |
| WEBCO, INC., PLAN ADMINISTRATOR FOR, WEBCO, INC. EMPLOYEE GROUP HEALTH PLAN, | ) ) ) ) |
| Defendants/Third-Party Plaintiffs, | ) |
| v. | ) ) |
| HCC LIFE INSURANCE COMPANY, | ) ) |
| Third-Party Defendant. | ) |

## ORDER

Currently pending before the Court is Plaintiff's Motion for Summary Judgment (Doc. No. 56), Defendants' Webco, Inc. and the Plan Administrator for the Webco Employee Group Health Plan Motion for Summary Judgment (Doc. No. 63), Third-Party-Defendant's Motion for Summary Judgment (Doc. No. 61), and Third-Party Plaintiff's Motion for Summary Judgment (Doc. No. 65). Each motion will be considered below.

**I.  Facts.**[1]

The Webco Employee Group Health Plan ("The Plan") is an employee qualified

---

[1] In accordance with Local Rule 56.1(a), "[a]ll facts set forth in the statement of the movant shall be deemed admitted for the purpose of summary judgment unless specifically controverted by the opposing party." See Ruby v. Springfield R-12 Public School Dist., 76 F.3d 909, 911 n. 6 (8th Cir. 1996). Accordingly, all facts set forth in the Court's statement of facts will be taken from defendant Webco's motion for summary judgment (Doc. No. 63) and defendant's suggestions in support (Doc. No. 64) unless otherwise specified.

health plan formed pursuant to the Employees Retirement Income Security Act of 1974 ("ERISA"). The Plan was maintained, sponsored and funded by Webco, Inc. ("Webco") for the benefit of its eligible employees and their eligible, covered dependents. The benefits were not covered by an insurance contract or paid by an insurance company but were paid by Webco, Inc. The Plan provides health, medical, surgical, prescription drug and other health benefits to its participants and their qualified covered dependents.

BMI-Health Plans ("BMI") is the Plan Supervisor and third-party administrator for the Plan. Pursuant to the contract between Webco and BMI, BMI's services are limited to development, administration, and maintenance of the Plan. BMI's responsibilities as Plan or Claims Supervisor include the following: maintenance of Plan eligibility and participant coverage records; verification of eligibility; plan enrollment administration and health plan claims adjudication in accordance with the Plan document; claim investigation as needed; issuance of claim payments; drafts for funding by the Plan sponsor; communication of claim denials; responding to claim inquiries; maintenance of claim files; and a variety of other administrative services. BMI also performs the initial evaluation, investigation, adjudication and approval or denial of claims under the Plan. In contrast, Webco's Plan Administrator, Ron Gannon ("Gannon'), was authorized to make Plan interpretations and exercise his discretion in making those interpretations.

Plaintiff Carl Lankford ("Lankford") was and continues to be an employee of Webco and is a covered participant under the Plan. Pursuant to the Plan, Lankford's 16-year-old daughter, Britny, is covered under the Plan as a dependent.

On February 25, 2006, Britny Lankford was involved in a single car accident and

sustained serious injuries. As a result of the accident, she incurred approximately $318,817.88 in medical expenses from several medical providers.

Lankford submitted his daughter's claim for payment. BMI concluded based on the police report and a blood chemistry report prepared by Cox Medical Center that Britny Lankford was driving under the influence of alcohol at the time of the accident. The report obtained by BMI from Cox Medical Center indicated that Britny Lankford's blood alcohol content was .148% at 2:12 a.m. on February 25, 2006. As a result of Britny Lankford's blood alcohol level, BMI sent a letter to Carl Lankford on May 4, 2006 denying his request for benefits under the Plan. The letter stated that the decision was based upon the Self-Inflicted and/or Intentional Injury Exclusion listed in Section 5 under the Plan. This exclusion states in relevant part:

> **Self-Inflicted and/or Intentional Injury**, or an illness (unless caused by a medical condition as defined by HIPAA). This exclusion shall include an illness or injuries which were incurred as a result of the Plan Member's use of alcohol or drugs, in excess of a state or federal statute, or non prescribed use as defined by a licensed medical examiner.

Thereafter, on June 20, 2006, Carl Lankford appealed BMI's decision to the Plan Administrator, Gannon. Carl Lankford also sent a supplemental letter to Gannon on June 29, 2006 inquiring whether the loss of blood suffered by his daughter in conjunction with her accident could cause her blood alcohol level content analysis to be skewed and higher since she had less blood in her system. On July 5, 2006, BMI inquired Health Review, LLC, a health services provider and consultant, about Carl Lankford's inquiry. Health Review, LLC responded on July 10, 2005 stating that the loss of blood would not have no impact on Britny's Lankford's blood alcohol content.

3

As a result of these above findings, BMI provided a memorandum to Gannon on July 19, 2006 explaining why Britny Lankford's claims would be excluded under the illegal activity exclusion. Following receipt of this information, Gannon determined to deny Carl Lankford's appeal and sent a proposed letter of denial to Webco's corporate parent, Nortek, Inc. ("Nortek") for review. After Nortek approved the letter, Gannon sent the final denial letter on July 28, 2006 to Carl Lankford. The letter stated that Britny Lankford's blood alcohol level was .148% compared to the legal limit of .08% under R.S.MO. § 577.012. This denial letter only cited to the Self-Inflicted and/or Intentional Injury Exclusion as a basis for denying Carl Lankford's appeal of BMI's decision.

Because of the Plan Administrator's decision to deny benefits, Carl Lankford filed suit in this Court on August 29, 2006 seeking a determination that the Plan's denial was patently wrong, arbitrary and capricious and that the Plan Administrator breached his fiduciary duty to plaintiff by wrongfully denying benefits (Doc. No. 1). After Lankford filed his Complaint, Gannon issued a follow-up letter on October 25, 2006 which stated that the July 28, 2006 denial letter was incomplete. The letter stated that the July 28, 2006 letter mistakenly did not include the Criminal Activity exclusion, which served as another basis for the Plan's denial of Carl Lankford's claims. The Criminal Activity exclusion reads as follows:

> **Criminal Activity** which results in any loss associated with the Plan Members commission or attempt to commit a felony or engaging in an illegal activity. Should an individual accused of an aforementioned act(s) and who subsequently has the criminal charge dismissed or is acquitted of any criminal act, this exclusion shall no longer be applied.

Both parties have moved for summary judgment on the issue of whether the injuries

4

sustained by Britny Lankford is covered under the Plan.

Additionally, Webco, as third-party plaintiff, has moved for summary judgment against its stop-loss insurer, HCC Life Insurance Company ("HCC"). Third-party defendant HCC has also moved for summary judgment against Webco. The nature of these motions involves Webco's stop-loss policy with HCC. Under the stop-loss policy, if Webco pays out more than $25,000.00 in benefits to one of its insureds, Webco receives benefits from HCC. (See Third-Party Defendant HCC's Motion for Summary Judgment, Doc. No. 62). This policy provides that HCC would reimburse Webco for all benefits paid out by Webco under its Plan that were over and above $25,000.00 if those benefits were incurred between January 1, 2005 and December 31, 2006. Id. Because plaintiff's claim exceeds $25,000.00, Webco submitted a claim for reimbursement to HCC. Id. Webco submitted this claim to HCC after it entered into an Escrow Agreement with plaintiff whereby Webco agreed to pay sums into the Lankford Medical Claim Payment Escrow Account sufficient to pay all of plaintiff's claims for medical expenses pending outcome of the lawsuit. Id. Funds deposited into the escrow account may not be returned to Webco unless either (1) the Court enters a final judgment in favor of Webco and determines that plaintiff is not entitled to any benefits or (2) the claim asserted by medical service providers for which plaintiff has sought reimbursement have been satisfied. Id.

HCC then issued a letter to Webco on January 19, 2007, denying Webco's claim on the grounds that the benefits for which Webco sought reimbursement had not been "paid" within the definition of the policy. In this letter, HCC also reserved its rights under the policy to reexamine Webco's claim for benefits. As a result of this letter, Webco thereafter filed

a third party complaint against HCC on April 26, 2007 (Doc. No. 27). Webco brought forth a declaratory judgment action under 28 U.S.C. § 2201 seeking this Court's determination of whether Webco is entitled to reimbursement for plaintiff's claims under the stop-loss policy.

The issues posed by the summary judgment motions between Webco and HCC, however, are only at issue if this Court finds in favor of plaintiff Carl Lankford. Thus, the Court will first address the summary judgment motions as between Carl Lankford and Webco.

## II.    Summary Judgment Standard

Summary judgment is appropriate if the movant demonstrates that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317, 327 (1986). The facts and inferences are viewed in the light most favorable to the nonmoving party. Fed. R. Civ. P. 56(c); Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-590 (1986). The moving party must carry the burden of establishing both the absence of a genuine issue of material fact and that such party is entitled to judgment as a matter of law. Matsushita, 475 U.S. at 586-90.

Once the moving party has met this burden, the nonmoving party may not rest on the allegations in the pleadings, but by affidavit or other evidence must set forth facts showing that a genuine issue of material fact exists. Fed. R. Civ. P. 56(e); Lower Brule Sioux Tribe v. South Dakota, 104 F.3d 1017, 1021 (8th Cir. 1997). To determine whether the disputed facts are material, courts analyze the evidence in the context of the legal

6

issues involved. Lower Brule, 104 F.3d at 1021. Thus, the mere existence of factual disputes between the parties is insufficient to avoid summary judgment. Id. Rather, "the disputes must be outcome determinative under prevailing law." Id. (citations omitted).

Furthermore, to establish that a factual dispute is genuine and sufficient to warrant trial, the party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the facts." Matsushita, 475 U.S. at 586. Demanding more than a metaphysical doubt respects the appropriate role of the summary judgment procedure: "Summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed to secure the just, speedy, and inexpensive determination of every action." Celotex, 477 U.S. at 327.

## III.  ERISA Standard of Review

A court reviewing an ERISA plan administrator's decision denying benefits should apply a de novo standard of review unless the plan gives the administrator discretionary authority to determine eligibility for benefits or to construe the plan's terms. Firestone Tire and Rubber Co. v. Bruch, 489 U.S. 101, 115 (1989). If a plan gives the administrator discretionary authority, then a court should review a plan administrator's decision only for abuse of discretion. Id. at 115; Cox v. Mid-America Dairymen, Inc., 965 F.2d 569, 571 (8th Cir. 1992), aff'd after remand, 13 F.3d 272 (8th Cir. 1993). The parties here do not dispute that the Plan gives the Plan Administrator discretionary authority to interpret or construe the Plan terms. The Court agrees that the Plan gives the Plan Administrator such discretionary authority.

7

However, the parties disagree on whether a less deferential standard of review applies.  A court may employ a less deferential standard of review if the claimant presents material, probative evidence demonstrating that (1) a palpable conflict of interest or a serious procedural irregularity existed, which (2) caused a serious breach of the plan administrator's duty to the claimant. See Kecso v. Meredith Corporation, 480 F.3d 849, 852 (8th Cir. 2007)(citing Woo v. Deluxe Corp., 144 F.3d 1157, 1160 (8th Cir. 1998)); See also Buttram v. Cent. States, S.E. & S.W. Areas Health & Welfare Fund, 76 F.3d 896, 901 (8th Cir. 1996) (the "irregularities must have some connection to the substantive decision reached, i.e., they must cause the actual decision to be a breach of the plan trustee's fiduciary obligations.").  The second prong of the test "presents a considerable hurdle for plaintiffs." Torres v. UNUM Life Ins. Co. of Am., 405 F.3d 670, 679 (8th Cir. 2005) (internal quotation omitted).  In the event that a conflict of interest is found, the Eighth Circuit has adopted a "sliding scale" approach under which a court will review for an abuse of discretion, but takes into consideration the conflict or procedural irregularity. Woo, 144 F.3d at 1161.  The egregiousness of the circumstances, however, may sometimes warrant that the court give no deference to the administrator's decision. See Armstrong v. Aetna Life Ins. Co., 128 F.3d 1263, 1265 (8th Cir. 1997)(applying de novo review where the plan administrator attempted to minimize claim payments by providing "incentives and bonuses to its claim reviewers based on criteria that include a category called 'claims savings.'").

Lankford argues that the egregious circumstances in this case present a palpable conflict of interest and serious procedural irregularities, which warrant this Court giving no deference to the Plan Administrator's decision.  Lankford asserts that Webco both

8

administers and funds the plan. Thus, Lankford contends that Webco has a system in place which creates a financial incentive to deny claims. Lankford points to the fact that when Webco pays the first $25,000.00 of health benefit claims according to its stop-loss policy with HCC, the $25,000.00 is funded out of Nortek, its corporate parent company, and back through a central banking system on a monthly accrued basis. These expenses are paid out of Webco's operating revenues which are electronically transferred to Nortek.

In addition, Lankford argues there were many procedural irregularities that occurred. Lankford argues that Nortek was truly the Plan Administrator rather than Webco. In support of his argument, Lankford states the following: Gannon was required to report to Nortek on issues relating to claims; Webco's Human Resources Manager sent information regarding the Lankford claim to Nortek before the denial letter was sent; Nortek issued a multi-page directive to Gannon that any time a claim fell outside the guidelines of the plan such as a denial or a large claim, he was to send it to Nortek for review; Gannon admitted that if Nortek had told him to pay Lankford's claim, he would have followed its directive; and Nortek's outside counsel expressed multiple concerns about denying the claim.

Webco responds that Nortek was not the de facto Plan Administrator as plaintiff claims. Rather, Webco claims that Gannon was the one who reviewed the claim file, rendered the decision, and considered the exclusions. Webco also notes that Gannon reached a decision before any corporate involvement from Nortek. Thus, Webco argues plaintiff has failed to show any procedural irregularities and how these alleged irregularities impacted Gannon's impartiality.

Under these facts, the Court finds that Lankford has not demonstrated a "palpable

9

conflict of interest" nor serious procedural irregularities. Just because an entity funds a plan and is also the plan administrator does not automatically give rise to a palpable conflict of interest. See Davolt v. The Executive Comm. of O'Reilly Auto., 206 F.3d 806, 809-10 (8th Cir. 2000)(holding the district court erred by finding an automatic conflict of interest merely because insurer and administrator were the same).[2] The Court concludes, however, that even if a conflict of interest was automatically created by Webco both funding and administering the Plan, Lankford fails to establish a causal connection between the conflict or procedural irregularity. Plaintiff "must show [that] the conflict or procedural irregularities [gave] rise to serious doubts as to whether the denial was the product of an arbitrary decision or the plan administrator's whim." Tillery, 280 F.3d at 1198, citing Schatz v. Mut. of Omaha Ins. Co., 220 F.3d 944, 948 (8th Cir. 2000). Plaintiff failed to show that there was any financial incentive or bonus connected to denying or minimizing claims. Other than the fact that Webco both funds and administers the plan, there is no other evidence suggesting a conflict of interest exists.

---

[2]The Court recognizes there is no consensus in this circuit as to whether a presumption of a palpable conflict of interest applies when the entity both funds and administers the plan. The Eighth Circuit recognized the lack of consensus in Kesco. 480 F.3d at 853, fn. 1. Compare Tillery v. Hoffman Enclosures, Inc., 280 F.3d 1192, 1197 (8th Cir. 2002)(holding that when an entity both funds and administers the plan, there is a rebuttable presumption that a palpable conflict of interest exists), Schatz v. Mut. of Omaha Ins. Co., 220 F.3d 944, 947-48 (8th Cir. 2000)(holding that "when the insurer is also the plan administrator, we have recognized something akin to a rebuttable presumption of a palpable conflict of interest") with Chronister v. Baptist Health, 442 F.3d 648, 655 (8th Cir. 2006)(holding that "it is wrong to assume a financial conflict of interest from the fact that the plan administrator is also the insurer") and Davolt, 206 F.3d at 809 (holding same). However, the Court noted in Davolt that the inquiry is fact specific and limited to instances where the relationship places the ERISA benefits plan administrator in a "perpetual" conflict of interest." 206 F.3d at 809.

10

Further, the procedural irregularities alleged by Lankford are insufficient to satisfy the first prong. It is evident from the record that Gannon was the one who investigated the claim, reviewed and interpreted the Plan terms, and made the decision as to whether to deny the claim. Webco only sent the denial letter to Nortek as a final review before the letter was sent out to Lankford. There is no evidence that Nortek reviewed the Plan terms and suggested exclusions under which to deny Lankford's claim. In fact, Gannon stated in his deposition:

> Q. Prior to getting some confirmation from Nortek about sending the denial letter–or however that came about–had you made a decision about whether this claim needed to be denied?
> A. Yes.
> Q. And I take it, given your letter, that was to deny the claim?
> A. Yes. I was very sure that was the right–correct step to take.
> Q. And the basis–the first basis for denial was the self-inflicted and/or intentional injury exclusion; correct?
> A. Right.

(See Gannon's Deposition, p. 13, l. 9-22). Also, there is no evidence that this multi-page directive of Webco sending its claims for final review to Nortek presents serious doubts as to whether the denial is a result of Gannon's whim or the product of an arbitrary decision. Gannon had reviewed the police report, the hospital report, the Missouri statute on the blood alcohol legal limit, and had BMI inquire whether Britny Lankford's loss of blood affected her blood alcohol content. The Court finds that these alleged irregularities or conflict of interest did not prevent Gannon as the Plan Administrator from impartially reviewing Lankford's claim. Because there is no conflict of interest or procedural irregularity, the Court finds that an abuse of discretion standard applies in review of the Plan Administrator's Decision.

Under the abuse-of-discretion standard, a court applies a deferential standard of review to an administrator's plan interpretation and fact-based eligibility determinations. See Donaho v. FMC Corporation, 74 F.3d 894, 898 (8th Cir. 1996) (abrogated on other grounds by Black & Decker Disability Plan v. Nord, 538 U.S. 822 (2003)). The deferential standard does not allow a reviewing court to reject an administrator's discretionary decision simply because the court disagrees. Id. The proper inquiry is "whether the plan administrator's decision was reasonable; i.e., supported by substantial evidence." Donaho, 74 F.3d at 899. Substantial evidence "means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." McGee v. Reliance Standard Life Ins. Co., 360 F.3d 921, 924 (8th Cir. 2004). A court will affirm an administrator's reasonable interpretation of a plan. Cox v. Mid-America Dairymen, Inc., 13 F.3d 272, 274 (8th Cir. 1993); Finley v. Special Agents Mut. Benefit Ass'n, Inc., 957 F.2d 617, 621 (8th Cir. 1992).

To properly apply the deferential standard of review, "a reviewing court must be provided the rationale underlying the trustee's discretionary decision." Cox, 965 F.2d at 574. A court's decision as to whether a plan administrator abused his or her discretion must be based on facts known to the administrator at the time the benefits claim decision was made. Cash v. Wal-Mart Group Health Plan, 107 F.3d 637, 641 (8th Cir. 1997); Collins v. Central States, Southeast and Southwest Areas Health & Welfare Fund, 18 F.3d 556, 560 (8th Cir. 1994). When applying the arbitrary and capricious standard of review, the Court only considers evidence that is part of the administrative record. See Barnhart v. UNUM Life Ins. Co. of America, 179 F.3d 583, 590 (8th Cir. 1999); Layes v. Mead Corp.,

12

132 F.3d 1246, 1251 (8th Cir. 1998). The court cannot substitute its own weighing of the conflicting evidence for that of the plan administrator. Cash, 107 F.3d at 641; Cox, 965 F.2d 569, 573 (8th Cir. 1992).

IV. Discussion

This is an ERISA action arising out of the denial of benefits to a covered dependent under the Plan. The central issue in this case is whether the Plan Administrator abused its discretion when it determined that Britny Lankford's injuries were not covered under the Plan's Criminal Activity and Self-Inflicted and/or Intentional Injury exclusions where Britny Lankford had a blood alcohol content exceeding the legal limit provided by state statute.

### A. Whether the Plan Administrator's Application of the Criminal Activity Exclusion Under the Plan is Unreasonable

Section 5 of the Plan states that the Plan will not pay benefits for injuries arising out of a criminal activity. The Criminal Activity exclusion reads as follows:

> **Criminal Activity** which results in any loss associated with the Plan Members commission or attempt to commit a felony or engaging in an illegal activity. Should an individual accused of an aforementioned act(s) and who subsequently has the criminal charge dismissed or is acquitted of any criminal act, this exclusion shall no longer be applied.

Webco argues this exclusion applies because Britny Lankford was driving with a blood alcohol level of .148%, which is in excess of the legal limit of .8%. Webco also argues this exclusion applies because Britny Lankford was driving without her seatbelt and engaged in underage drinking. However, Lankford argues that this exclusion does not apply because Britny Lankford was never charged or convicted of a crime as a result of this accident. Lankford contends that even if this exclusion applies, the exception prevents its application because the exclusion does not apply to anyone who is acquitted or has charges dismissed

13

against them.  Additionally, Lankford notes that this exclusion was not cited in any of the denial letters provided to Lankford prior to litigation.  Lankford states that this criminal activity exclusion was inserted in the October 25, 2006 revised denial letter after Lankford filed suit in August 2006.  Webco insists that a charge or conviction is not necessary in order for this exclusion to be invoked.

The Court agrees with Lankford that Webco engaged in post-hoc rationale by inserting the criminal activity exclusion in a revised denial letter two months after Lankford filed suit.  King v. Hartford Life, 414 F.3d 994, 1004 (8th Cr. 2005)(concluding that the Plan Administrator offered a post hoc rationale during litigation to justify a decision reached on different grounds during the administrative process).  The denial letters sent prior to litigation only referenced the Self-Inflicted Injury and/or Intentional Injury exclusion.  Thus, the Court declines to uphold the Plan Administrator's decision based upon an exclusion not relied upon during the administrative process.

However, even if the Court considered the Criminal Activity exclusion as a justification to the Plan Administrator's decision, the Court finds that the Plan Administrator's reliance on this exclusion is unreasonable.  The Court agrees with Lankford that it is unreasonable to apply the exception in the exclusion to someone who is acquitted of charges or charged with a crime and had all charges dismissed, but not apply the exclusion to someone who was never charged or convicted of a crime.  It would be nonsensical for someone who had all charges dismissed against them receive benefits under the Plan, but then deny benefits to someone never charged or convicted of any crime.  The record is clear that Britny Lankford was never charged with or convicted of driving under the influence as a result of

14

the accident.

Therefore, because the Plan Administrator offered a post hoc rationale and relied on an unreasonable interpretation of the Criminal Activity exclusion, the Court will not uphold the Plan Administrator's decision based upon these grounds.

> **B. Whether the Plan Administrator's Application of the Self-Inflicted and/or Intentional Injury Exclusion Under the Plan is Unreasonable**

Section 5 of the Plan states that the Plan will not pay benefits for injuries arising out of a "Self-Inflicted and/or Intentional Injury." The Self-Inflicted Injury exclusion reads as follows:

> **Self-Inflicted and/or Intentional Injury**, or an illness (unless caused by a medical condition as defined by HIPAA). This exclusion shall include an illness or injuries which were incurred as a result of the Plan Member's use of alcohol or drugs, in excess of a state or federal statute, or non prescribed use as defined by a licensed medical examiner.

Lankford argues this exclusion is intended to exclude claims for health benefits as a result of suicide or attempted suicide. Lankford claims there is no evidence Britny Lankford intended to crash her car or hurt herself, thus this exclusion does not apply. Also, Lankford asserts that this exclusion does not specifically prohibit claims arising out of drunk driving. Lankford notes that Nortek's counsel acknowledged that Webco's "self-inflicted injury" exclusion was unclear. Nortek's counsel had stated in an e-mail communication that if Webco plans to maintain the position that it will not cover injuries sustained while drunk driving, then it should revise the plan summary to say so clearly and directly.

Webco responds that this exclusion was meant to exclude expenses incurred as the result of injuries or illnesses which are either self-inflicted or intentional. Webco argues that wrecking a car while driving late at night, at an excessive speed while intoxicated and

15

injuring oneself is a self-inflicted injury regardless of whether the awful consequences were intended.

Plaintiff relied heavily on King, a recent Eighth Circuit decision, in his argument that the self-inflicted injury exclusion does not exclude injuries resulting from alcohol intoxication. In King, the policy contained an exclusion for losses caused by an "intentionally self-inflicted injury, suicide, or suicide attempt, whether sane or insane." 414 F.3d at 997. The Court found that the self-inflicted injury exclusion was an unreasonable interpretation when it was read in the context of the policy because the policy contained another exclusion which eliminated coverage for taking drugs, sedatives, narcotics, barbiturates, amphetamines, or hallucinogens." Id. at 1004-05. The Court further stated "[i]f the exclusion for 'intentionally self-inflicted injury" eliminated coverage for unintended injuries caused or contributed to by intentionally ingesting substances into the body, then there would be no reason for the seventh exclusion regarding the taking of drugs and narcotics." However, the Plan at issue in this case contains no such additional exclusion for substances. Additionally, the self-inflicted injury exclusion at issue in King specifically exclude coverage for suicide or attempted suicide, but the exclusion at issue here does not specifically exclude suicide or even mention suicide. Also, the exclusion at issue in this case specifically excludes injuries incurred as the result of alcohol in excess of a state or federal statute and no such language was contained in the exclusion at issue in King. Thus, the Court finds that the decision in King can be distinguished on these grounds.[3]

---

[3]The other case plaintiff cited to is not within this circuit and can be distinguished on similar grounds. Ayers v. The Maple Press Co., 168 F. Supp. 2d 349, 355 (M.D. Pa. 2001).

16

This Court finds that while plaintiff's interpretation of the self-inflicted injury provision is another reasonable interpretation under the Plan, the Plan Administrator's decision is not an unreasonable one under the Plan terms. The Court cannot find a Plan Administrator's decision unreasonable simply because it finds evidence to support another reasonable interpretation of the Plan language. See McGee, 360 F.3d at 924 (stating that a plan administrator's discretionary decision is not unreasonable merely because "a different, reasonable interpretation could have been made."). Although the self-inflicted and/or intentional injury exclusion does not specifically mention injuries resulting from drunk driving, the exclusion states injuries resulting from the use of alcohol is excluded. By including the language in excess of the "legal limit" prescribed by "state or federal statute," the Plan drafters were intending to exclude situations in which the use of alcohol becomes criminal in nature, such as driving under the influence or selling alcohol to minors.

Contrary to plaintiff's assertion, it is not clear that the exclusion was only meant to exclude injuries resulting from suicide as the exclusion does not even mention suicide. The Court concludes the exclusion is fairly clear in stating that the "exclusion shall include an illness or injuries which were incurred as a result of the Plan Member's use of alcohol or drugs, in excess of a state or federal statute." In this case, the Plan Administrator concluded based upon the police and hospital laboratory reports that Britny Lankford had a blood alcohol level in excess of the legal limit. Thus, in accordance with the Plan language, her injuries occurred as a result of her use of alcohol in excess of the legal limit.

Further, the Plan Administrator's interpretation of the Plan is reasonable under the Finley five-factor test. The five Finley factors are (1) whether the Plan Administrator's

17

interpretation is consistent with the goals of the plan; (2) whether the Plan Administrator's interpretation renders any language in the Plan meaningless or internally inconsistent; (3) whether the interpretation conflicts with the substantive or procedural requirements of the ERISA statute; (4) whether the Plan Administrator interpreted the words at issue consistently; and (5) whether the interpretation is contrary to the clear language of the Plan. Finley, 957 F.2d at 621. The Plan Administrator does not render any language in the Plan meaningless or inconsistent. In fact, the interpretation is consistent with the Plan's goals of excluding coverage for certain injuries arising out of particular circumstances, such as criminal activity. There is no evidence that the words at issue were ever interpreted inconsistently with regard to other claimants. Further, the interpretation is not contrary to the Plan language. Rather, denying a claimant benefits who was injured as a result of using alcohol with a blood alcohol level of .148% is directly in line with the language specifically excluding injuries arising from the use of alcohol in excess of the legal limit as prescribed by state or federal statute.

Thus, the Court finds that the Plan Administrator's decision was reasonable based on the Self-inflicted and/or Intentional Injury exclusion. See Lennon v. Metropolitan Life Ins. Co., 504 F.3d 617, 622 (6th Cir. 2007)(concluding that it was not arbitrary and capricious for a Plan Administrator to deny benefits under a self-inflicted injury exclusion to a beneficiary of an insured who died as a result of drunk driving); Eckelberry v. ReliaStar Life Ins. Co., 469 F.3d 340, 342 (4th Cir. 2006)(holding that an ERISA fiduciary did not act unreasonably when it denied benefits to an insured beneficiary after the insured died from driving with a blood alcohol level 50% higher than the legal limit);Cates v. Metropolitan Life

18

Ins., 1998 U.S. App. LEXIS 14975, *7-8 (6th Cir. June 30, 1998)(holding that the Plan Administrator's decision to deny benefits to wife's claim for accidental benefits was not arbitrary and capricious because a clause in the husband's policy specifically excluded from accidental death coverage any purposeful, self-inflicted injuries and any injuries caused by drug use and husband had died as a result of drunk driving)(per curiam). "When a plan administrator offers a reasonable explanation for its decision, supported by substantial evidence, it should not be disturbed." Parkman v. Prudential Insurance Co., 439 F.3d 767, 772 (8th Cir. 2006)(citing Fletcher-Merrit v. NorAm Energy Corp., 250 F.3d 1174, 1180-81 (8th Cir. 2001); McGee, 360 F.3d at 924 (8th Cir. 2004). Therefore, as the administrative record demonstrates that the Plan Administrator's decision was reasonable, was supported by substantial evidence on the record, and was not an abuse of discretion, defendants' motion for summary judgment (Doc. No. 63) is **GRANTED** and plaintiff's motion for summary judgment (Doc. No. 56) is **DENIED**. Because the Court finds that the Plan Administrator's decision to deny coverage to Lankford was reasonable and supported by substantial evidence, the Court will not address the merits of the summary judgment motions between Webco and HCC as the issue of HCC's payment of the claim under the stop-loss policy is now moot.

**V.     Conclusion**

For the foregoing reasons, Defendants' Webco, Inc. and the Plan Administrator for the Webco Employee Group Health Plan Motion for Summary Judgment (Doc. No. 63) is **GRANTED**, Plaintiff's Motion for Summary Judgment (Doc. No. 56) is **DENIED**, and the remaining motions are **DENIED AS MOOT**: Third-Party Defendant's Motion for Summary

19

Judgment (Doc. No. 61) and Third-Party Plaintiff's Motion for Summary Judgment (Doc. No. 65).

**IT IS SO ORDERED**

Date: 02/25/08
Kansas City, Missouri

**S/ FERNANDO J. GAITAN, JR.**
Fernando J. Gaitan, Jr.
Chief United States District Judge